The Norman Ker Company built the Ridgewood High School under contract with the board of education of the township of Ridgewood, Bergen county. McNulty Brothers, Incorporated, contracted with Norman Ker Company to do all the furring, lathing and plastering for $12,750, and after doing some abandoned the work June 26th, 1918, and three days later was petitioned into bankruptcy; receivers were appointed, and in July the corporation was adjudged a bankrupt. The Norman Ker Company finished the work to be done by McNulty Brothers, Incorporated, and charged the cost to its account. The receivers filed a lien claim under the Municipal Mechanics' Lien act with the board of education for $8,417.21, for work alleged to have been done by their bankrupt before it abandoned its contract. The Diamond Wall Cement Company, complainant, supplied McNulty Brothers, Incorporated, with material and filed a lien claim after the adjudication of bankruptcy, and brought this suit to enforce the claim. The receivers answered, setting up their claim to the fund. The Norman Ker Company answered that the cost of completing the McNulty Brothers, Incorporated, contract would exhaust what was left of the contract price, and that there was nothing coming to the receivers, and the hearing was brought on to settle that question.
The McNulty Brothers' contract price was $12,750, with extras $290, a total of $13,040. There was paid to it on account, before the bankruptcy, $1,720, leaving a balance of the contract price when work was abandoned of $11,320. The Norman Ker Company claims to have expended in the completion of the contract for labor and material $9,219.35, and for premium on bonds $976.56. In addition, the Norman Ker Company claim $1,300 for supervising the McNulty *Page 67 
work, and ten per cent. of its outlay and charges for overhead expenses.
The outlay for labor and material is sustained by the authenticated records of the Norman Ker Company by check vouchers and receipts, and by the persons who disbursed the money. The fact is challenged indirectly, only by proof that before the abandonment McNulty Brothers, Incorporated, spent for labor and material $9,814.95 (Norman Ker Company used the unused material), and by an estimate to finish the work would cost $4,428.95. The argument on the one hand is that only the difference between the amount so spent and the contract price, plus extras, $13,040, viz., $3,125.05, is reasonably allowable to complete the work, and, at most, only the estimate of $4,428.95 should be allowed.
Neither proposition disturbs confidence in the claim that the cost to the Norman Ker Company was, as it says, $9,219.35. As to the former, it may be that McNulty Brothers, Incorporated, bid too low. And as to the estimate: that was made just before the hearing, four years after the work was done, and was made by one whose qualification for that sort of testimony was meagre, if not entirely inadequate. He was a workman, not an employer or contractor, and he calculated on smooth sailing, not the vicissitudes that usually beset employers of labor. His allowance for wages for laborers and their number was lower, and his estimate of the efficiency of mechanics, per man, per day, was higher than that actually experienced; and, moreover, his estimate was based on a given amount of work to be done, not on the actual amount, which was in serious dispute at the trial. There is often a wide difference between an estimate and the cost of performance. Any bankrupt contractor, and many who are not, can testify to that. The receivers have little cause to criticise. They were given the opportunity to do what Norman Ker Company was forced to do, and refused. If at that time work had progressed to the point they now claim, and their bankrupt had laid out, as they claim, more than three-quarters of the contract price, it is strange they did not undertake to finish the work themselves. *Page 68 
As to the charges of Norman Ker Company for supervision and for overhead: Mr. Roberts, the managing director, and, practically, Norman Ker Company, made fifty-two trips from New York to Ridgewood to inspect and supervise the McNulty job, as well as the rest of the operation, for which was charged, at the rate of $15 a trip, as the McNulty proportion, $780. The foreman on the job, Mr. Alexander, who supervised the labor, was paid a wage of $48 per week, and of this $20 per week for twenty-six weeks was charged against the McNulty account as its proportion.
The charges for supervision are not allowed as such, but are taken into consideration in the allowance for overhead, to which supervision, like any other expense of maintaining a plant and business organization, is, it would seem, properly chargeable. Overhead expense is undoubtedly an important and proper item to be reckoned with in such undertakings. It is not disputed that ten per cent. of the outlay is the customary charge, and, I think, it is reasonable.
As to the premiums for the surety bonds: The receiver's notice of lien and that of the complainant, and those of other creditors of the McNulty Brothers, Incorporated, tied up more than $10,000 of the Norman Ker Company's money, and to release it it was obliged to post bonds with the board of education to save it harmless from the liens of the claimants, as authorized by statute. This predicament was brought about by the subcontractor's failure to pay its debts and the unwarranted lien claim of the receivers, and from which the Norman Ker Company had the right to relieve itself at the expense of those who occasioned it. The premiums on the bonds are less than the interest on the sum impounded, and Norman Ker Company would otherwise have been entitled to interest had it not furnished bonds. Much stress was laid on the fact that premiums to the amount of $488.20 have not as yet been paid. I fail to see how this affects the matter. Norman Ker Company owes it and will have to pay. *Page 69